IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:15-cv-1666 |
| | ) | |
| F & R CONTRACTORS CORP. | ) | |
| and | ) | |
| F & R CONTRACTORS LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiff, the United States of America, by authority of the Attorney General of the United States, at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), by and through its undersigned attorneys, alleges as follows:

## INTRODUCTION

1.      This is a civil action for civil penalties brought pursuant to Section 309(b) and (d) of the Clean Water Act ("CWA" or the "Act"), 33 U.S.C. § 1319(b) and (d), against F & R Contractors Corp., a Puerto Rico corporation, and F & R Contractors LLC, a limited liability company registered in Puerto Rico (collectively, "Defendants"), for 1) unpermitted discharges of pollutants in stormwater from a construction site, in violation of CWA Section 301, 33 U.S.C. § 1311, and 2) failure to comply with the Federal Construction General Permit issued pursuant to CWA Section 402, 33 U.S.C. § 1342, for the discharge of pollutants in stormwater from construction sites.  The allegations in this Complaint concern F & R Contractors Corp.'s operations at three construction sites in Puerto Rico.

## JURISDICTION AND VENUE

2.       This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345 and 1355, and 33 U.S.C. § 1319(b).

3.       Venue is proper in this District pursuant to 33 U.S.C. § 1319(b) and 28 U.S.C. §§ 1391 and 1395 because Defendants are incorporated and/or conduct business in this District and because the violations occurred in this District.

4.       Authority to bring this civil action is vested with the Attorney General of the United States, pursuant to Section 506 of the CWA, 33 U.S.C. § 1356, and 28 U.S.C. §§ 516 and 519.

5.       Notice of the commencement of this action has been provided to the Commonwealth of Puerto Rico pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b).

## DEFENDANT

6.       F & R Contractors Corp. is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico.  Defendant's headquarters and principal place of business is in San Juan, Puerto Rico.

7.       F & R Contractors LLC is a limited liability company organized and existing under the laws of the Commonwealth of Puerto Rico.  Defendant's headquarters and principal place of business is in San Juan, Puerto Rico.

8.       This action relates to violations alleged to have occurred between January 2004 and January 2008 at three of F & R Contractor Corp's facilities in Puerto Rico.

9.       Pursuant to a certificate of conversion, dated November 10, 2011, that F & R Contractors Corp. filed with the Commonwealth of Puerto Rico, F & R Contractors Corp. has

- 2 -

since converted to F & R Contractors LLC.

10.     Each defendant is a "person" as defined in CWA Section 502, 33 U.S.C. § 1362(5), and 40 C.F.R. § 122.2.

## STATUTORY AND REGULATORY AUTHORITY

11.     The Clean Water Act is designed to restore and maintain the chemical, physical, and biological integrity of the nation's waters.  See 33 U.S.C. § 1251(a).

12.     To accomplish the objectives of the Act, CWA Section 301(a), 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" except in certain circumstances, including in compliance with a National Pollutant Discharge Elimination System ("NPDES") permit issued by EPA pursuant to CWA Section 402, 33 U.S.C. § 1342.

13.     CWA Section 502(12), 33 U.S.C. § 1362(12), defines the term "discharge of a pollutant" as, inter alia, "any addition of any pollutant to navigable waters from any point source."

14.     CWA Section 402(p), 33 U.S.C. § 1342(p), requires a permit for stormwater discharges associated with industrial activity.

15.     EPA regulations define the term "stormwater discharge associated with industrial activity" to include stormwater discharges from construction activities, including clearing, grading, and excavation activities, that result in a disturbance of five or more acres of total land area.  See 40 C.F.R. § 122.26(b)(14)(x).

16.     In 1992, EPA issued the Final NPDES General Permit for Storm Water Discharges from Construction Sites ("Federal CGP").  See 57 Fed. Reg. 41176, 41209 (Sept. 9, 1992).  EPA has, on various occasions, subsequently modified and reissued this general permit.  See 63 Fed. Reg. 7858-7906 (Feb. 17, 1998); 63 Fed. Reg. 36490-36519 (July 6, 1998); 65 Fed. Reg. 25122-

25145 (Apr. 28, 2000); 68 Fed. Reg. 39087-39091 (July 1, 2003); 73 Fed. Reg. 40338-40343 (July 14, 2008); 77 Fed. Reg. 12286-12293 (Feb. 29, 2012).  At all times relevant to this Complaint, the applicable version of the Federal CGP was the 2003 version.

17.     Under EPA's regulations, any person who discharges or who proposes to discharge stormwater associated with industrial activity is required to apply for an individual permit or to seek coverage under a promulgated stormwater general permit.  See 40 C.F.R. §§ 122.21(a), 122.26(c), 122.28.

18.     A person seeking coverage under the Federal CGP must submit a Notice of Intent ("NOI") at least seven days prior to the commencement of construction activities to be covered under the general permit.  See 40 C.F.R. § 122.28(b); Federal CGP, Parts 2.1.B, 2.3.A.

19.     The requirements of the Federal CGP include the following:

a.     A permittee must develop and implement a stormwater pollution prevention plan ("SWPPP"), which sets forth a plan to reduce pollutants in stormwater discharges from construction activities.  See Federal CGP, Part 3.1.  Required elements of the SWPPP include:

i.      the sequence and timing of soil-disturbing activities at the site, see Federal CGP, Part 3.3.B.2;

ii.     a legible site map that shows, inter alia, the direction of stormwater flow, the areas of soil disturbance, the locations of major best management practices, the stabilization locations, the locations of equipment storage areas, the locations of all waters of the United States, and the locations of stormwater discharges, see Federal CGP,

- 4 -

Part 3.3.C;

iii.    the general sequence of construction activities during which SWPPP measures will be implemented, <u>see</u> Federal CGP, Part 3.4.A;

iv.    a schedule for interim and permanent stabilization measures, <u>see</u> Federal CGP, Part 3.4.B; and

v.    documentation of permit eligibility with respect to endangered species, <u>see</u> Federal CGP, Part 3.7.

b.    A permittee must maintain as part of its SWPPP records of the dates on which major grading activities occurred, construction activities temporarily or permanently ceased on a portion of the site, and stabilization measures were implemented.  <u>See</u> Federal CGP, Part 3.4.C.

c.    A permittee must implement best management practices ("BMPs"), <u>see</u> Federal CGP, Part 3.6.A, which are activities, controls, maintenance procedures, and other practices implemented "to prevent or reduce the discharge of pollutants to waters of the United States."  Federal CGP, Appendix A.

d.    A permittee must amend its SWPPP, as necessary, to account for changes in design, construction, operation, or maintenance at the site that has or could have a significant effect on the discharge of pollutants to waters of the United States.  <u>See</u> Federal CGP, Part 3.11.A.

e.    A permittee must conduct site inspections during the period of construction. <u>See</u> Federal CGP, Part 3.10.

f.    A permittee must maintain a copy of the SWPPP at the construction site

and must post near the main entrance to the site a sign identifying the location of the SWPPP.  <u>See</u> Federal CGP, Part 3.12.

20.     CWA Section 309(b), 33 U.S.C. § 1319(b), authorizes the Administrator of EPA to commence a civil action when any person is in violation of CWA Section 301 or of any permit issued pursuant to the Act.

21.     CWA Section 309(d) provides, in part, that any person who violates CWA Section 301 or any permit issued pursuant to the Act shall be subject to a civil penalty not to exceed $32,500 per day for each such violation.  <u>See</u> 33 U.S.C. § 1319(d); 40 C.F.R. § 19.4; 62 Fed. Reg. 7121-01 (Feb. 13, 2004) (codified at 40 C.F.R. pt. 19).

<u>**GENERAL ALLEGATIONS**</u>

22.     F & R Contractors Corp. conducted construction activity in at least three locations in Puerto Rico:  1) the Estancias Del Bosque Housing Development ("Estancias Del Bosque"), located at State Road 845, Km. 5.8, Los Aquino Sector, Carraízo Ward, in the city of Trujillo Alto, Puerto Rico; and 2) the Puerta del Mar Residential Development ("Puerta del Mar"), located at West End Street G, Marbella Urbanization, in the city of Aguadilla, Puerto Rico, and 3) the Señorío de Gonzaga Housing Development ("Señorío de Gonzaga"), located at State Road 962, Km. 2.0, Canóvanas Ward, in the city of Canóvanas, Puerto Rico.

23.     With respect to each location identified in Paragraph 22, at all times relevant to this Complaint, F & R Contractors Corp. had operational control over the construction plans and specifications, including the ability to make modifications to such plans and specifications, and/or F & R Contractors Corp. had day-to-day operational control over the activities at each location that were necessary to ensure compliance with the SWPPP for each location or with other

- 6 -

conditions of the Federal CGP.

24.     With respect to each location identified in Paragraph 22, at all times relevant to this

Complaint, F & R Contractors Corp. was an operator, as defined by 40 C.F.R. 122.2 and Federal

CGP Appendix A, and therefore was required to obtain NPDES permit coverage for discharges of

stormwater associated with construction activity at each location, pursuant to 40 C.F.R.

§§ 122.21(b), 122.26(c), 122.28(b).

**Estancias del Bosque**

25.     Beginning on or about January 26, 2004, F & R Contractors Corp. conducted,

contracted for, supervised, and/or otherwise controlled clearing, grading, and excavation activities

at Estancias del Bosque.  The activities disturbed approximately 34.5 acres of land.

26.     The activities were "construction activity" within the meaning of 40 C.F.R.

§ 122.26(b)(14)(x) and "industrial activity" within the meaning of 40 C.F.R. § 122.26 and 33

U.S.C. § 1342(p)(2)(B).

27.     F & R Contractors Corp. submitted a NOI to EPA on or about April 29, 2004,

seeking coverage under the Federal CGP for discharges of stormwater associated with

construction activities at Estancias del Bosque.  F & R Contractors Corp. obtained such coverage

on or about May 6, 2004.

28.     On numerous occasions beginning on or about January 26, 2004, stormwater on the

Estancias del Bosque property collected in an on-site retention pond, was discharged from that

pond, and flowed approximately 60 feet via ditches, culverts, and/or rivulets into Meléndez Creek.

29.     Meléndez Creek is a relatively permanent, continuously flowing tributary of the

Río Grande de Loíza.  Meléndez Creek flows approximately 700 feet from the Estancias del

- 7 -

Bosque property to its confluence with the Río Grande de Loíza.

30.     The Río Grande de Loíza is a relatively permanent, continuously flowing body of water.  The Río Grande de Loíza flows approximately ten miles from its confluence with Meléndez Creek to the Atlantic Ocean.

31.     Between at least January 26, 2004, and July 18, 2007, the SWPPP for Estancias del Bosque did not contain the following:

  i. the sequence and timing of soil-disturbing activities at the site;

  ii. a legible site map showing the direction of stormwater flow, the areas of soil disturbance, the locations of major best management practices, the stabilization locations, the locations of equipment storage areas, the locations of all waters of the United States, and the locations of stormwater discharges;

  iii. the general sequence of construction activities during which SWPPP measures would be implemented;

  iv. a schedule for interim and permanent stabilization measures;

  v. documentation of permit eligibility with respect to endangered species; and

  vi. records of the dates when major grading activities occurred, when construction activities on any portion of the property temporarily or permanently ceased, and when stabilization measures were initiated and completed.

32.     Between at least January 26, 2004, and July 18, 2007, F & R Contractors Corp. failed to revise the SWPPP for Estancias del Bosque to account for changes in design,

- 8 -

construction, operation, or maintenance at the site that had or could have had a significant effect on the discharge of pollutants to waters of the United States.

33.     Between at least January 26, 2004, and October 30, 2007, F & R Contractors Corp. failed to adequately implement BMPs contained in the SWPPP for Estancias del Bosque, including, but not limited to, silt fences, hay bales, and grass seeding, mulching, sodding, and/or planting.

34.     On June 21, 2006, and February 14, 2007, EPA personnel inspected the Estancias del Bosque property.  During the inspection, EPA personnel observed that F & R Contractors Corp. failed to post a sign or other notice near the main entrance to the property containing a copy of the NOI and noting the location of the SWPPP.

**Puerta del Mar**

35.     Beginning on or about April 20, 2005, F & R Contractors Corp. conducted, contracted for, supervised, and/or otherwise controlled clearing, grading, and excavation activities at Puerta del Mar.  The activities disturbed approximately nine acres of land.

36.     The activities were "construction activity" within the meaning of 40 C.F.R. § 122.26(b)(14)(x) and "industrial activity" within the meaning of 40 C.F.R. § 122.26 and 33 U.S.C. § 1342(p)(2)(B).

37.     F & R Contractors Corp. submitted a NOI to EPA on or about April 1, 2005, seeking coverage under the Federal CGP for discharges of stormwater associated with construction activities at Puerta del Mar.  F & R Contractors Corp. obtained such coverage on or about April 8, 2005.

38.     On numerous occasions beginning on or about April 20, 2005, stormwater was

- 9 -

discharged from the Puerta del Mar property via ditches, culverts, and/or rivulets into an open drainage ditch and flowed approximately 100 feet into the Atlantic Ocean.

39.     Between at least April 20, 2005, and March 28, 2008, the SWPPP for Puerta del Mar did not contain the following:

   i.     the sequence and timing of soil-disturbing activities at the site;

   ii.    a legible site map showing the direction of stormwater flow, the areas of soil disturbance, the locations of major best management practices, the stabilization locations, the locations of equipment storage areas, the locations of all waters of the United States, and the locations of stormwater discharges;

   iii.   the general sequence of construction activities during which SWPPP measures would be implemented;

   iv.    a schedule for interim and permanent stabilization measures;

   v.     documentation of permit eligibility with respect to endangered species; and

   vi.    records of the dates when major grading activities occurred, when construction activities on any portion of the property temporarily or permanently ceased, and when stabilization measures were initiated and completed.

40.     Between at least April 20, 2005, and March 28, 2008, F & R Contractors Corp. failed to revise the SWPPP for Puerta del Mar to account for changes in design, construction, operation, or maintenance at the site that had or could have had a significant effect on the discharge of pollutants to waters of the United States.

41.     Between at least April 20, 2005, and March 28, 2008, F & R Contractors Corp.
failed to adequately implement BMPs contained in the SWPPP for Puerta del Mar, including, but
not limited to, silt fences and grass seeding, mulching, sodding, and/or planting.

42.     On January 25, 2007, EPA personnel inspected the Puerta del Mar property.
During the inspection, EPA personnel observed that F & R Contractors Corp. did not post a sign
or other notice near the main entrance to the property containing a copy of the NOI and noting the
location of the SWPPP.

43.     Between at least May 4, 2005, and March 28, 2008, F & R Contractors Corp. failed
to perform site inspections of the Puerta del Mar property every 14 days pursuant to the SWPPP.

**Señorío de Gonzaga**

44.     Beginning on or about October 3, 2005, F & R Contractors Corp. conducted,
contracted for, supervised, and/or otherwise controlled clearing, grading, and excavation activities
at Señorío de Gonzaga.  The activities disturbed approximately 71 acres of land.

45.     The activities were "construction activity" within the meaning of 40 C.F.R.
§ 122.26(b)(14)(x) and "industrial activity" within the meaning of 40 C.F.R. § 122.26 and 33
U.S.C. § 1342(p)(2)(B).

46.     F & R Contractors Corp. submitted a NOI to EPA on or about November 29, 2007,
seeking coverage under the Federal CGP for discharges of stormwater associated with
construction activities at Señorío de Gonzaga.  F & R Contractors Corp. obtained such coverage
on or about December 6, 2007.

47.     On numerous occasions, between at least October 3, 2005, and December 6, 2007,
stormwater was discharged from the Señorío de Gonzaga property via ditches, culverts, and/or

rivulets into the Río Canóvanas.

48.     The Río Canóvanas is a relatively permanent, continuously flowing tributary of the Río Grande de Loíza.  The Río Canóvanas flows approximately three miles from the Señorío de Gonzaga property to its confluence with the Río Grande de Loíza.

49.     The Río Grande de Loíza is a relatively permanent, continuously flowing body of water.  The Río Grande de Loíza flows approximately four miles from its confluence with the Río Canóvanas to the Atlantic Ocean.

50.     By failing to have permit coverage between at least October 3, 2005, and December 6, 2007, F & R Contractors Corp. conducted construction activity at the Señorío de Gonzaga property without an adequate SWPPP and without adequate BMPs, such as retention ponds, silt fences, hay bales, and temporary or permanent stabilization measures.

## FIRST CLAIM FOR RELIEF
### (Failure to Comply with Permit for Estancias del Bosque)

51.     The United States realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 50.

52.     On numerous occasions, beginning on or about January 26, 2004, F & R Contractors Corp. and/or persons acting on its behalf, or with F & R Contractors Corp.'s consent and/or knowledge, discharged "storm water associated with industrial activity," within the meaning of CWA Section 402(p)(2)(B), 33 U.S.C. § 1342(p)(2)(B), and 40 C.F.R. § 122.26, from point sources at Estancias del Bosque into the Meléndez Creek.

53.     The Meléndez Creek, the Río Grande de Loíza, and the Atlantic Ocean are all "waters of the United States" and "navigable waters" within the meaning of CWA Section 502(7),

- 12 -

33 U.S.C. § 1362(7).

54.     The ditches, culverts, and/or rivulets described in Paragraph 28 are "point sources" within the meaning of CWA Section 502(14), 33 U.S.C. § 1362(14).

55.     The stormwater discharges described in Paragraph 52 constitute discharges of a pollutant within the meaning of CWA Section 301, 33 U.S.C. § 1311, and CWA Section 502(12), 33 U.S.C. § 1362(12).

56.     On each day between at least January 26, 2004, and October 30, 2007, F & R Contractors Corp. failed to comply with the Federal CGP at the Estancias del Bosque property. F & R Contractors Corp.'s noncompliance consisted of at least one or more of the following:

        i.        failure to prepare an adequate SWPPP, as described in Paragraph 31;

        ii.       failure to revise the SWPPP, as described in Paragraph 32;

        iii.      failure to implement BMPs, as described in Paragraph 33; and

        iv.      failure to post adequate notice, as described in Paragraph 34.

57.     Pursuant to Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, Defendants are liable for a civil penalty of up to $32,500 for each day between at least January 26, 2004 and October 30, 2007 for violating the Federal CGP, as described in Paragraph 56.

### SECOND CLAIM FOR RELIEF
**(Failure to Comply with Permit for Puerta del Mar)**

58.     The United States realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 57.

59.     On numerous occasions, beginning on or about April 20, 2005, F & R Contractors

Corp. and/or persons acting on its behalf, or with F & R Contractors Corp.'s consent and/or knowledge, discharged "storm water associated with industrial activity," within the meaning of CWA Section 402(p)(2)(B), 33 U.S.C. § 1342(p)(2)(B), and 40 C.F.R. § 122.26, from point sources at Puerta del Mar into the Atlantic Ocean.

60.     The ditches, culverts, and/or rivulets and the open drainage ditch described in Paragraph 38 are "point sources" within the meaning of CWA Section 502(14), 33 U.S.C. § 1362(14).

61.     The stormwater discharges described in Paragraph 59 constitute discharges of a pollutant within the meaning of CWA Section 301, 33 U.S.C. § 1311, and CWA Section 502(12), 33 U.S.C. § 1362(12).

62.     On each day between at least April 20, 2005, and March 28, 2008, F & R Contractors Corp. failed to comply with the Federal CGP at the Puerta del Mar property.  F & R Contractors Corp.'s noncompliance consisted of at least one or more of the following:

> i.      failure to prepare an adequate SWPPP, as described in Paragraph 39;
>
> ii.     failure to revise the SWPPP, as described in Paragraph 40;
>
> iii.    failure to implement BMPs, as described in Paragraph 41;
>
> iv.     failure to post adequate notice, as described in Paragraph 42; and
>
> v.      failure to perform site inspections, as described in Paragraph 43.

63.     Pursuant to Section 309(b) and (d) of the CWA, 33 U.S.C. § 1319(b) and (d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, Defendants are liable for a civil penalty of up to $32,500 for each day between at least April 20, 2005 and March 28, 2008 for violating the Federal CGP, as described in Paragraph 62.

## THIRD CLAIM FOR RELIEF
### (Unpermitted Discharges of Stormwater at Señorío de Gonzaga
### in Violation of CWA Section 301)

64.     The United States realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 63.

65.     On numerous occasions, between at least October 3, 2005, and December 6, 2007, F & R Contractors Corp. and/or persons acting on its behalf, or with F & R Contractors Corp.'s consent and/or knowledge, discharged "storm water associated with industrial activity," within the meaning of CWA Section 402(p)(2)(B), 33 U.S.C. § 1342(p)(2)(B), and 40 C.F.R. § 122.26, from point sources at Señorío de Gonzaga into the Río Canóvanas.

66.     The Río Canóvanas, the Río Grande de Loíza, and the Atlantic Ocean are all "waters of the United States" and "navigable waters" within the meaning of CWA Section 502(7), 33 U.S.C. § 1362(7).

67.     The ditches, culverts, and/or rivulets described in Paragraph 47 are "point sources" within the meaning of CWA Section 502(14), 33 U.S.C. § 1362(14).

68.     The stormwater discharges described in Paragraph 65 constitute discharges of a pollutant within the meaning of CWA Section 301, 33 U.S.C. § 1311, and CWA Section 502(12), 33 U.S.C. § 1362(12).

69.     None of the stormwater discharges described in Paragraph 65 was permitted.

70.     Each of the stormwater discharges described in Paragraph 65 constituted a separate violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

71.     Pursuant to CWA Section 309(b) and (d), 33 U.S.C. § 1319(b) and (d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, Defendants are liable for a civil

penalty of up to $32,500 for each of the stormwater discharges described in Paragraph 65.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America respectfully requests that this Court:

A.      Assess civil penalties against Defendants of up to $32,500 per day for each

violation alleged herein;

B.      Award the United States its costs and disbursements in this action; and

C.      Grant any such further relief as this Court deems just and proper.

Respectfully submitted,


THE UNITED STATES OF AMERICA

ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division



  _/s/ Ruben D. Gomez_____
RUBEN D. GOMEZ (Gov. Atty. No. G00809)
SCOTT BAUER
Attorneys
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 514-4797 (Gomez)
(202) 514-4133 (Bauer)
ruben.gomez@usdoj.gov
scott.bauer@usdoj.gov


ROSA E. RODRIGUEZ-VELEZ
United States Attorney
District of Puerto Rico

- 16 -

HECTOR E. RAMIREZ
Assistant United States Attorney
Chief, Civil Division
Torre Chardon, Suite 1201
350 Carlos Chardon Avenue
San Juan, Puerto Rico 00918
(787) 766-5656